## ATLANTA CONSOLIDATED STREET-RAILWAY COMPANY *v.* CITY OF ATLANTA.

1. The act of October 10, 1891 (Acts 1890–91, vol. 2, p. 457), is the only source from which the mayor and general council of Atlanta can, in a case like the present one, derive power to charge a street-railroad company with a portion of the original cost of paving when it lays its tracks upon a street which has already been thus improved.
2. Under this act it is incumbent upon the mayor and general council, before granting a street-railroad company permission to lay its tracks on a paved street, to fix the amount of compensation which will be required of it; and when no amount has been thus fixed, no demand can be made against the company after the tracks have been laid, either in behalf of the city or of abutting property owners, for the cost of pavement.
3. Where the mayor and general council granted such a railroad company permission to lay its tracks on a paved street, expressly stipulating that no charge for paving should be made against the company, the general council could not thereafter, under the provisions of the act above cited, enforce by execution or otherwise a claim against the company for any portion of the original cost of laying the paving in that street.

Argued June 14, — Decided July 11, 1900.

Affidavit of illegality. Before John C. Reed, judge **pro hac vice.** Fulton superior court. September term, 1898.

*George Westmoreland,* for plaintiff in error.
*J. A. Anderson* and *J. T. Pendleton,* contra.

COBB, J. In 1893 the street-railway company applied to the city council of Atlanta for permission to lay its tracks upon a portion of Smith street. At the date of this application Smith street had been paved and improved under the provisions of the city charter authorizing streets to be improved and a portion of the expense of such improvements to be assessed against abutting property owners. The city council granted the permission in a resolution, which, among other things, declared that no charge should be made against the street-railway company on account of the city or abutting property owners for the payment of any part of the expense of the improvements which had already been made on Smith street. After this permission had been granted, the company laid its tracks upon the street in question, and proceeded to operate its railway thereon. Subsequently the city council caused an execution to be issued against the company for a sum which was alleged to be the

amount due to the abutting property owners for its pro rata of the expense of the improvements on Smith street. The company interposed an affidavit of illegality; and, the issue thus raised coming on for trial, the court directed a verdict in favor of the plaintiff in execution. To this judgment the company excepted.

It was insisted in the argument here that the judgment was erroneous, for the reason that the City of Atlanta had no authority to issue an execution to enforce a claim of the character involved in the present case. It was replied to this argument that no question was raised in the affidavit of illegality as to the authority of the city to issue the execution, the sole question therein raised being that the execution, no matter whether *issued* legally or illegally, was *proceeding* illegally. Under the view we take of the case, it is unnecessary to determine either whether the question is properly before us or whether the city had the authority to enforce the claim by execution. We do not think the city had power to enforce the claim for which the execution was issued, either by execution or in any other way. In order to decide the controlling question involved in the present case it becomes necessary to make a brief review of the different acts conferring upon the City of Atlanta the power to improve the streets of the city, so far as these acts have any bearing upon the authority of the city to make assessments against street-railway companies. The act of September 3, 1881 (Acts 1880–81, p. 358, Code of the City of Atlanta, 1899, §§ 138, 139, 140), provided that the city council might, under certain conditions, improve the streets of the city and assess a certain proportion of the expense of such improvements against the abutting property owners; and if there was a street-railroad company having its tracks upon the street so improved, such company should be required to improve, in the manner that the street was improved, the width of its tracks and for three feet on each side thereof. This act further provided that the assessment against abutting property owners should be collected by execution to be issued by the city clerk. The act of October 12, 1885 (Acts 1884–5, p. 416), provided that if the street-railroad company should fail to improve the street in the time and manner prescribed, the city might cause the

work to be done and enforce the collection of the cost of such work against the street-railroad company in the manner prescribed in the act of 1881 for collections of assessments against abutting property. The act of December 24, 1886 (Acts 1886, p. 239), provided that, whenever the public interests may require, the city council may by ordinance "assess any railroad or street company . . to improve the street" and do part or all of such work as right and justice may dictate, whether such work be petitioned for or not, and the mode of procedure and remedies to enforce the same shall be those provided for street and sewer improvement in other cases provided by law and the ordinances of the city.

The act of October 10, 1891 (Acts 1890−91, p. 457, Code of Atlanta, 1899, § 143 et seq.), provided that: "When street-railroad tracks are laid in said city on a street which has already been paved or permanently improved, and upon which said company has no track, said city may require such contribution or payment to said city for said city and the owners of abutting property, at the time of laying such tracks, on account of the paving or pavement improvement of any such street, as the mayor and general council of said city may deem proper (but such amount shall not be greater than in cases provided for under section 1 of this act [which required street-railroad companies under certain conditions to pave between the rails of each line of track and for four inches outside thereof]). Said city may regulate and enforce the payment or collection of such amount of contribution, and may require payment of same before consent granted to lay such tracks, and may grant consent conditional on such payment thereafter. Such street-railroad company shall be liable for its pro rata of the costs to repave when the same is done according to law." The execution in the present case was issued for the purpose of enforcing a demand which the city claimed to have against the street-railway company for the benefit of the abutting property owners on Smith street, under the provisions of the act of 1891, just quoted. An examination of the execution and the itemized bill attached thereto is all that is necessary to make it clear that the city council in issuing the execution was attempting to proceed under the act just referred to. That this was true was practically

conceded in the argument here. Counsel for the railway company contended that, as that company had laid its tracks upon Smith street upon the faith of the statement in the resolution permitting it so to do without charge for any part of the improvement which had been made on the street, the city authorities were estopped from claiming anything against it. On the other hand, it was claimed by counsel for the city that so much of the ordinance as attempted to relieve the company from the payment of a proper proportion of the expense incurred by the property-owners in improving the street was ultra vires and void, for the reason that, while the city authorities had a discretion as to the amount that should be charged the company for permission to lay its tracks upon the improved street, the law imperatively required that at least some amount should be charged. The city council either had authority to allow the company to lay its tracks upon the street without charge, or it had not that right. If it had the right, of course it had no power, after the company had acted upon the resolution granting it permission to lay its tracks without charge, to call upon the company for any amount either as due itself or the abutting property owners. If it did not have the right to give the permission to lay its tracks without requiring that at least some part of the sum which had been expended by the property-owners for paving that part of the street which the company sought to occupy should be paid, then the grant to the company of permission to lay its tracks without this requirement would seem to be void. In either view there was not in the present case any attempt on the part of the city, either before or at the time permission was given the company to lay its tracks, to fix an amount which should be paid to the abutting property owners under the provisions of the act of 1891, as a condition precedent to the laying of the tracks of the company upon the street. If the city council had no right to grant the permission without demanding something, then it will not be pretended that the grant was made under the provisions of the act of 1891. The grant not having been made under authority of that act, of course after the grant had been acted on and the street occupied it is not within the power of the council to retrace its steps and make an assessment against the company for

its occupation of the street, when the law requires that the assessment should be made before the right to occupy the street is granted. Construing the act of 1891 as contended for by counsel for the city, that it required that some amount should have been charged, the act clearly requires that that amount shall be fixed and determined before the right to occupy the street is granted. It is true that payment of the amount so fixed may be deferred, but the act is imperative that the amount must be fixed before that privilege is granted. It is not pretended in the present case that this was done, and therefore the city council can not enforce payment of the amount claimed by it either by execution or any other way. Whether the grant to occupy the street without the payment of any amount would be void for want of authority in the city council to make such grant, and what would be the rights of the city council or of the abutting property owners in that event, are questions not raised in the present record and will not now be decided.

It was contended in the argument that, as the grant contained a provision that it should be subject to any ordinance that might be thereafter passed by the city council, the claim in the present case could be sustained as being one founded upon an ordinance duly passed, requiring the street-railway company to pay the amount specified in the execution to the abutting property owners. This contention can not be sustained, for two reasons: first, the claim sought to be enforced is, as has been seen, under a resolution purporting to be passed under authority of the act of 1891, and there is nothing in the record to indicate that in making the assessment in the present case the city council were attempting to carry into effect the authority reserved by them to pass other ordinances affecting the rights of the company in Smith street; and second, that there is no authority in the charter of Atlanta for the city council to make an assessment against street-railway companies for the benefit of abutting property owners, except in the act of 1891. Although the right to pass ordinances referring to the railway company was expressly reserved and the company expressly agreed to abide by the provisions of such ordinances, this would not confer power to pass an ordinance which was not authorized by the charter. What has just been said distinguishes this case from that of

*City of Atlanta* v. *Gate City Street Railroad Company*, 80 *Ga.* 276.   In that case the agreement of the railroad company was to comply with ordinances then of force, or that might thereafter be adopted, relative to the company in question, and the ordinance passed in that case under authority of this stipulation was one which the city had charter power to pass.

Under the facts as they appeared at the trial, the judge should have dismissed the levy, and the direction of a verdict in favor of the plaintiff in execution was erroneous.

*Judgment reversed.   All the Justices concurring.*